UNITED STATES DISTRICT COURT DISTRICT
OF CONNECTICUT

| | |
|---|---|
| LAMONTE BROWN,<br>Plaintiff<br><br>v.<br><br>CITY OF HARTFORD;<br>JAMES C. ROVELLA, CHIEF OF POLICE,<br>in his official and individual capacities;<br>OFFICER JAY MONTROSE,<br>in his official and individual capacities;<br>OFFICER JAMES KECZKEMETHY,<br>in his official and individual capacities;<br>OFFICER FERGUSON,<br>in his official and individual capacities;<br>OFFICER PHIL BORKOWSKI,<br>in his official and individual capacities,<br>Defendants | CIVIL ACTION NO.:<br>3:14-cv-00433 (WWE)<br><br><br><br><br><br><br><br><br><br><br><br>April 17, 2015 |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OFFICERS'
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

The defendants, Officers Brian Ferguson, Phil Borkowski, Jay Montrose, and James Keczkemethy, respectfully submit this memorandum of law in support of their motion to dismiss the plaintiff's Amended Complaint, dated September 2, 2015 for failure to state a claim upon which relief may be granted.

I.    FACTS AND PROCEDURAL HISTORY

The plaintiff, Lamonte Browne, ("Plaintiff"), a resident of Hartford, filed the instant action in eight (8) counts, against the defendants, City of Hartford, Police Chief James Rovella, and Hartford Police Officers Jay Montrose, James Keczkemethy, Brian Ferguson and Phil Borkowski, ("collectively referred to as "defendant officers"), arising out of the plaintiff's arrest on November 14, 2012, at 256 Marshal Street in Hartford.

1

Count One of the plaintiff's complaint is directed at the four defendant officers and alleges false arrest, malicious prosecution, and excessive force in violation of both the United States and Connecticut constitutions. Count Two is directed to the defendant officers and alleges deprivation of his property without due process of law in violation of both the United States and Connecticut constitutions. Count Three is directed only at Officer Montrose and alleges a state law claim of common law assault. Count Four is directed at Officer Montrose and alleges a state law claim of negligent infliction of emotional distress. Count Five is directed only at Officer Keczkemethy and alleges a state common law claim of assault. Count Six is directed toward Officer Keczkemethy and alleges a state common law claim of negligent infliction of emotional distress. Counts Seven and Eight are directed toward the City of Hartford and Chief James Rovella and set forth a Monell claims.

The plaintiff claims that on November 14, 2012, he was on the premises of 256 South Marshall Street in Hartford, Connecticut, as a guest of David and Gloria Davis. (Complaint, ¶ 8). Plaintiff claims that after the visit was over he left the building with his dog. (Complaint, ¶ 9). As he left the residence, Officer Montrose arrived at the location in response to a noise complaint. (Complaint, ¶ 10). Plaintiff claims that he told Officer Montrose that he knew nothing about the noise complaint and then continued walking down the street. (Complaint, ¶¶ 11-13).

Plaintiff alleges that he was approached a second time by two police cruisers, including Officer Montrose, and placed under arrest. (Complaint, ¶¶ 14-15). Plaintiff alleges that he complied with the officer's demands and did not resist arrest. (Complaint, ¶ 16). As the plaintiff was being arrested he was approached by an

acquaintance, Kareem Lewis, whom he claims he told to walk away so as not to make matters worse. (Complaint, ¶ 18-19). The plaintiff alleges that after that exchange, Officer Borkowski sprayed mace in the face of Kareem Lewis and Officers Montrose and Keczkemethy fired their taser guns at the plaintiff. (Complaint, ¶¶ 20-21). The Plaintiff alleges that he pulled the taser prongs from his body because he feared the effect it may have, due to the fact he had a bullet lodged in his back and a metal rod in his leg. (Complaint, ¶ 22).

The plaintiff claims that Officer Montrose grabbed him by the hood of his sweatshirt and attempted to force him to the ground, and that Officer Keczkemethy punched him in the left cheek. (Complaint, ¶ 23). Plaintiff claims that Officer Keczkemethy kneed him in the kidney area and that Officer Montrose straddled him and punched him repeatedly in the left side of the face before flipping him over and handcuffing him. (Complaint, ¶¶ 24-25).

Plaintiff alleges that "Officer Montrose, in arresting the plaintiff, charged him without grounds nor probable cause to do so." (Complaint, ¶ 29). The Plaintiff claims injuries and losses as a result, including the loss of his dog when it was impounded and euthanized as a result of his inability to afford the cost to reclaim the dog from the pound. (Complaint, ¶ 31). The plaintiff asserts that "Officer J. Montrose and Officers Keczkemethy, in placing the plaintiff under arrest and in custody..." violated his rights. (Complaint, ¶ 32).

Notably absent from the complaint are any factual allegations whatsoever regarding the conduct of Officer Brian Ferguson other than the single allegation in paragraph 3 that Officer Ferguson was an officer employed by the City of Hartford. The

plaintiff does not make any factual claims whatsoever as to Officer Ferguson's actions against the plaintiff or his involvement in the arrest.

II. <u>LAW AND ARGUMENT</u>

    A. <u>Standard of Review for a Motion to Dismiss</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defense of failure to state a claim upon which relief may be granted may be presented via a motion to dismiss.

A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), tests only the adequacy of the complaint. <u>United States v. City of N.Y.</u>, 359 F.3d 83, 87 (2d Cir. 2004). In deciding a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Bernheim v. Litt</u>, 79 F.3d 318, 321 (2d Cir.1996) (internal quotations omitted).

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1964–5, 167 L.Ed.2d 929 (2007).

In <u>Beckford v. City of New Haven</u>, 3:11-CV-498 VLB, 2011 WL 6153182 (D. Conn. 2011) (Exhibit A), this Court recently summarized the relevant the standard of review regarding a motion to dismiss pursuant to Rule 12(b)(6):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. ... While Rule 8 does not require detailed factual allegations, a pleading that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Id., at * 2 (internal quotations and citations omitted).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., *quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal citations omitted).

B. <u>Count One fails to state a claim for malicious prosecution against any of the defendant officers.</u>

Count One of the plaintiff's complaint alleges, among other claims, that the actions of the defendants "constituted malicious prosecution in violation of the plaintiff's right to be free from such conduct pursuant to Article 1, Sections 7, 8, and 9 of the Connecticut Constitution, and the Fourth and Fourteenth Amendments to the United States Constitution." (Complaint, Count One, ¶ 33).

The Second Circuit has articulated the following standard for setting forth a claim of malicious prosecution in violation of the Fourth Amendment:

> To maintain a § 1983 claim for malicious prosecution under the Fourth Amendment, the deprivation of liberty—the seizure—must have been effected "pursuant to legal process." *Heck v. Humphrey,* 512 U.S. 477, — —, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994). "The essence of malicious prosecution is the perversion of proper legal procedures." *Broughton v. State of New York,* 37 N.Y.2d 451, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310, 314, *cert. denied,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975). Ordinarily, this "legal process" will be either in the form of a warrant, in which case the arrest itself may constitute the seizure, *see id.* at 94, 335 N.E.2d at 314–315 ("When an unlawful arrest has been effected by a warrant an appropriate form of action is malicious prosecution."), or a subsequent arraignment, in which case any post-

5

arraignment deprivations of liberty (such as being bound-over for trial) might satisfy this constitutional requirement. In this case, [the plaintiff's] arrest cannot serve as the predicate deprivation of liberty because it occurred prior to his arraignment and without a warrant, and therefore was not "pursuant to legal process." *See Heck,* 512 U.S. at ——, 114 S.Ct. at 2371; *see also Broughton,* 373 N.Y.S.2d at 94, 335 N.E.2d at 314 ("The distinction between false imprisonment and malicious prosecution in the area of arrest depends on whether or not the arrest was made pursuant to a warrant."). Typically, a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest (addressed *infra* ), *see Broughton,* 373 N.Y.S.2d at 94, 335 N.E.2d at 315 ("Whenever there has been an arrest and imprisonment without a warrant, the officer has acted extrajudicially and the presumption arises that such an arrest and imprisonment are unlawful...."), while the tort of malicious prosecution will implicate post-arraignment deprivations of liberty. *See Raschid v. News Syndicate Co.,* 239 A.D. 289, 267 N.Y.S. 221, 225 (1st Dep't 1933) ("A charge and an arrest do not amount to a prosecution. Th[e] action [of malicious prosecution] lies only when a legal prosecution, a judicial proceeding, has been maliciously, and without probable cause, instituted against the plaintiff, and has been terminated in the plaintiff's favor.") (internal quotations and citation omitted), *aff'd,* 265 N.Y. 1, 191 N.E. 713 (1934) (with inapplicable modification); *see also* W. Keeton et al., Prosser and Keeton on the Law of Torts § 119, at 888 (5th ed. 1984) ("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim...."). **Therefore, to successfully pursue a § 1983 claim of malicious prosecution in violation of his Fourth Amendment rights, [the plaintiff] must show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation.** *See Stachura,* 477 U.S. at 309, 106 S.Ct. at 2544.

Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 116-17 (2d Cir. 1995) (emphasis added).

Additionally, both the Second Circuit and the United States Supreme Court have held that in order to maintain a claim for malicious prosecution, the plaintiff must plead that the underlying criminal case terminated in his favor.

> "One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused. ... This requirement avoids parallel litigation over the issues of probable cause and guilt ... and it precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying

6

criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.

Heck v. Humphrey, 512 U.S. 477, 484 (1994) (internal citations and quotation omitted). *See also,* Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir. 1980); Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). The elements of malicious prosecution are identical under Connecticut law. Daoust v. McWilliams, 49 Conn. App. 715, 728 (1998).

In this case, the facts pleaded by the plaintiff do not state a claim for malicious prosecution against any of the defendants. First, the plaintiff has failed to plead a post-arraignment deprivation of liberty. The facts as pleaded by the plaintiff are that the plaintiff's arrest was warrantless. Therefore, in order to state a claim for malicious prosecution, the plaintiff would have to plead facts to show "some post-arraignment deprivation of liberty that rises to the level of constitutional violation." Id. In this case the plaintiff has not done so. He has not pleaded any facts regarding the date of his arraignment, and thus has not pleaded any post-arraignment deprivation of liberty.

Moreover, the plaintiff has not pleaded that the underlying criminal action terminated in his favor. Indeed, he has not pleaded any facts relative to the termination of the criminal action at all. Therefore, the plaintiff's has failed to state a claim of malicious prosecution as against all of the defendant officers, and those claims contained in Count One should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

C. Count One fails to state a claim for false arrest as to all of the defendant officers.

1. *Count One fails to state a claim for false arrest as to all of the defendant officers because it fails to allege that the underlying criminal action terminated in the plaintiff's favor.*

Count One of the plaintiff's complaint claims that he was arrested without probable cause. (¶ 32). "To state a valid claim for false arrest or malicious prosecution under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claims." Walker v. Sankhi, 494 Fed. Appx. 140, 142 (2d Cir.2012).

A necessary prerequisite to a finding of arrest without probable cause is that the plaintiff's underlying criminal case have terminated in his favor. In Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the United States Supreme Court held:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, *the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence*; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (emphasis added).

In Singleton v. City of New York, 632 F.2d 185 (1980), the Second Circuit held that in order to prevail upon a § 1983 malicious prosecution claim, the plaintiff must

8

plead and prove that the underlying criminal charges were terminated in his favor.

> Without proof that the criminal prosecution based on probable cause was terminated in defendant's favor no federal claim exists. To hold otherwise would permit a defendant to relitigate the issue of probable cause by way of a s 1983 action, despite the state court's determination of that issue against him after full and fair consideration of the evidence, thus posing the prospect of harassment, waste and endless litigation, contrary to principles of federalism.

Id. 195.

Subsequently, in Kronon v. Fornal, 612 F. Supp. 68 (1985) the district court applied the reasoning of Singleton, to claims of false imprisonment, reasoning:

> Having decided that the criminal charge at issue in the state court was not disposed of in a manner favorable to the plaintiff, thereby precluding the plaintiff from pressing his malicious prosecution claim in this section 1983 action, it would be anomalous to allow the plaintiff to challenge here the existence of probable cause for his arrest and incarceration for that *same* criminal charge. If the plaintiff in this case were permitted to go forward with his claim of false imprisonment, "there [c]ould arise the strange situation that ... upon virtually the same facts the defendant would not be liable in an action for malicious prosecution but would be in one for false imprisonment." *Clewley v. Brown Thomson, Inc.*, 120 Conn. 440, 443, 181 A. 531 (1935).

Konon v. Fornal, 612 F. Supp. 68, 71 (D. Conn. 1985).

The district court's reasoning in Konon was subsequently quoted and adopted by the Second Circuit in Roesch v. Otarola, 980 F.2d 850, 853 (2d Cir. 1992), which held that the favorable the termination doctrine was also applicable to cases alleging false imprisonment and false arrest. Id., at 853-854 ("The policy considerations that motivated the Court in *Singleton* are equally appropriate in the context of a section 1983 claim sounding in false imprisonment or false arrest.").

The Second Circuit in Roesch also held that dismissal of criminal charges after successful completion of Connecticut's pre-trial accelerated rehabilitation program does not qualify as favorable termination for purposes of civil rights suits. Id., at 853. "A

person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim." Roesch v. Otarola, 980 F.2d 850, 853 (2d Cir. 1992). *Accord,* Miles v. City of Hartford, 445 F. App'x 379, 383 (2d Cir. 2011) (favorable termination is an element of § 1983 claim sounding in false arrest).

In this case, the plaintiff has failed to allege any facts whatsoever regarding the termination of his criminal proceedings. As the Second Circuit has held, anything short of an outright "acquittal or an unqualified dismissal" of the charges against him does not qualify as favorable termination. Therefore, the plaintiff has failed to state a claim for false arrest as to all of the defendant officers.

### 2. *Plaintiff's Count One false arrest claim also fails as to Officers Ferguson and Borkowski because it fails to allege that they arrested the plaintiff.*

There is additional basis for dismissal of the Count One false arrest claims as against Officers Ferguson and Borkowski. "It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). *Accord,* Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010).

In order to state a claim of arrest without probable cause as to each individual officer, the plaintiff must plead facts sufficient to indicate, at a minimum that the defendant arrested or assisted in the arrest of the plaintiff. *See,* Oliphant v. Villano, 3:09CV862 JBA, 2011 WL 3902741, *3 (D. Conn. Sept. 6, 2011) (Exhibit B) ("Plaintiff does not allege that ... Defendants physically restrained him or used any force against him ... Accordingly, Plaintiff's false arrest and excessive force claims against ... Defendants are dismissed.")

The plaintiff has alleged that Officer Montrose placed him under arrest (Complaint, Count One, ¶¶ 14-15 and 29), and that Officer Keczkemethy used force against the plaintiff to assist Officer Montrose in getting the plaintiff into handcuffs. (Complaint, Count One, ¶¶ 21-23 and 32). Additionally, the plaintiff has specifically alleged, "The pertinent acts or omission of the defendant officers, Officer J. Montrose and Officers Keczkemethy, in placing the plaintiff under arrest and in custody" violated his constitutional rights. (Complaint, Count One, ¶ 32).

The plaintiff has made no such allegations against Officer Borkowski, and indeed, the plaintiff's complaint indicates that while Officers Montrose and Keczkemethy were placing the plaintiff under arrest, that Officer Borkowski was engaged with a third party. (Complaint, Count One, ¶ 20).

Officer Ferguson is named in paragraph 3 of Count One, wherein it is alleged that he was a Hartford Police Officer acting under color of law. Then there is no further mention of Officer Ferguson anywhere in the complaint. It is not even alleged that he was present at the time of the arrest.

Therefore, in addition to the fact that the plaintiff fails to plead favorable termination, the plaintiff has also failed to plead facts sufficient to prove that Officers Ferguson and Borkowski arrested him, or that they participated in his arrest individually such as to raise a claim for false arrest. This is additional basis for dismissal of those claims.

### D. Count One fails to state a claim for excessive force as to Officers Ferguson and Borkowski

Although not expressly enunciated, Count One of the complaint appears to intend to set forth a claim of excessive force in the course of an arrest. (Complaint, Count

One, ¶¶ 15-25). In analyzing whether the plaintiff has pleaded facts sufficient to state a claim, the court must analyze the requisite elements of each count as applied to the allegations against each officer individually. "It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). *Accord*, Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010).

As indicated above, the only allegation in the complaint regarding Officer Ferguson is that he was a Hartford Police Officer. (Complaint, Count One, ¶ 3). In order to state a claim of excessive force against Officer Ferguson, the plaintiff must plead facts to show that Officer Ferguson used <u>some force</u> upon him. The plaintiff has made no such allegation. Although the plaintiff has alleged that Officers Montrose and Keczkemethy engaged in a struggle with him, and deployed their tasers upon him, the plaintiff has not made any such claims as related to Officer Ferguson. Indeed, the plaintiff has not even alleged that Officer Ferguson was present, much less that he engaged in any physical contact with the plaintiff. Id. *See also,* Garlasco v. Stuart, 602 F. Supp. 2d 396, 411 (D. Conn. 2009) (granting summary judgment in favor of defendant where record was "devoid of any evidence ... that the plaintiff's person was subject to any physical force at all.").

Similarly, the plaintiff has failed to state any facts to support a claim of excessive force as to Officer Borkowski. The plaintiff's complaint gives a detailed account of the alleged physical struggle with Officers Montrose and Keczkemethy, but does not indicate that Officer Borkowski in any manner engaged in that struggle. Instead, the plaintiff has alleged that Officer Borkowski was engaged with a third party, Kareem

Lewis. (Complaint, Count One, ¶ 20). Therefore, the plaintiff has also failed to state a claim for excessive force as against Officer Borkowski.

E. Count Two fails to state a claim of violation of plaintiff's property rights.

In Count Two the plaintiff alleges that the defendants collectively deprived him of his property without due process of law in violation of the rights of the plaintiff under both the state and federal constitutions. Presumably, the property to which he refers is his dog, "Boomer," which was with him at the time of the arrest. (Complaint ¶ 9). The plaintiff alleges, "As a result of [his] arrest, the plaintiff's dog was impounded, and when the plaintiff could not afford the cost to reclaim the dog from the pound, the dog was euthanized." Id., at ¶ 31.

Notably, the plaintiff uses the passive voice to claim that "his dog was impounded." He does not claim that any of the defendant officers personally impounded his dog. Once the plaintiff was arrested, the dog could not be left to roam the street. The plaintiff has not alleged that the individual defendants – as opposed to an animal control officer or a neighbor - were in any manner responsible or involved in the plaintiff's dog being impounded. See, Conn. Gen. Stat. § 22-332 (authorizing municipal animal control officer to impound dogs and procedure for redeeming impounded dogs). Nor has the plaintiff alleged that any of the defendant officers personally euthanized the dog. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). See also, Grant v. Angelo, 2014 IL App (4th) 130685-U, ¶ 48 (2014) (Exhibit C) (finding of violation of plaintiff's due process rights could not be made against police officer who seized dog as evidence when officer was not the person who actually euthanized dog).

13

Therefore, the plaintiff has failed to state a claim of deprivation of his property interests without due process as to any of the defendants and Count Two should be dismissed.

### F. Plaintiff's claims of negligent infliction of emotional distress contained in Counts Four and Six are barred by the doctrine of government immunity.

In Counts Four and Six the plaintiff alleges claims of negligent infliction of emotional distress against Officers Montrose and Keczkemethy respectively. Specifically the plaintiff claims in each count that the defendant "was negligent in that he realized or should have realized that his conduct involved an unreasonable risk to cause emotional distress to the plaintiff," and that "[s]uch negligence was, in fact, a substantial factor in producing emotional harm to the plaintiff[.]" (Complaint, Counts Four and Six, ¶¶ 32-33).

Connecticut General Statute § 52-557n(2)(B) provides, "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: ... (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

> Municipal officials are immune from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability "would cramp the exercise of official discretion beyond the limits desirable in our society." *Shore v. Stonington*, 187 Conn. 147, 157, 444 A.2d 1379 (1982). Discretionary act immunity "reflects a value judgment that-despite injury to a member of the public-the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." *Haddock v. New York*, 75 N.Y.2d 478, 484, 553 N.E.2d 987, 554 N.Y.S.2d 439 (1990). In contrast, municipal officers are not immune from liability for negligence arising out

of their ministerial acts, defined as acts "to be performed in a prescribed manner without the exercise of judgment or discretion."

Doe v. Petersen, 279 Conn. 607, 614-15, 903 A.2d 191, 197 (2006).

> Although municipalities are generally immune from liability in tort, municipal employees historically were personally liable for their own tortious conduct. The doctrine of governmental immunity has provided some exceptions to the general rule of tort liability for municipal employees. A municipal employee ... has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act.

Tryon v. Town of N. Branford, 58 Conn. App. 702, 708, 755 A.2d 317, 321 (2000) (internal citations and quotations omitted).

As stated by one Superior Court, "Governmental immunity is a bar to liability whether the case of negligence against the municipal employee is a strong or weak one and whether the result is trivial or tragic." Florence v. Plainfield, 50 Conn. Supp. 1, 6, 909 A.2d 587, 590 (Super. Ct. 2006). The same court continued:

> Decisions regarding the scope of an investigation—whether probable cause for an arrest exists, whether information is speedy or not, whether to seek an arrest warrant or make a warrantless arrest, when and how best to pursue a wanted person, the number of police officers that are needed to conduct and complete an investigation, whether coordination with other agencies is necessary during an investigation, the search for a suspect or the pursuit of that suspect is appropriate and the proper supervision of subordinates—all require a municipal police officer to employ wide discretion and to exercise judgment. As municipal employees engaged in discretionary functions, these defendants possess qualified governmental immunity from liability unless some recognized exception dissolves that immunity.

Florence v. Plainfield, 50 Conn. Supp. 1, 7-8, 909 A.2d 587, 591 (Super. Ct. 2006)

The plaintiff's claim of negligent infliction of emotional distress clearly rests upon the discretionary actions of Officers Montrose and Keczkemethy in evaluating whether there was probable cause for an arrest, and how much force was necessary to effect that arrest. The plaintiff's negligent infliction of emotional distress claims are, therefore,

clearly barred by the doctrine of governmental immunity.

III. CONCLUSION

For the foregoing reasons the court should grant the defendants' motion to dismiss counts One, Two, Four and Six of the plaintiff's complaint.

>THE DEFENDANTS,
>James Montrose, James Keczkemethy,
>Officer Ferguson and Phil Borkowski
>
>By:     /s/ Rebecca M. Harris
>Rebecca M. Harris, Esq.
>Crumbie Law Group, LLC
>100 Pearl Street, 12th Floor
>Hartford, CT 06103
>Federal Bar No. ct26669
>Tel: 860-725-0025
>Fax: 860-760-0308
>Email: RHarris@crumbielaw.com

## CERTIICATION OF SERVICE

The undersigned certified that on April 17, 2015 a copy of this Notice of Appearance was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties who have appearances as of the time of this filing, by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

<u>For Lamonte Brown</u>:
John Q. Gale
Gale & Kowalyshyn
363 Main Street, 4th Floor
Hartford, CT 06106
jgale@lawlordsofhartford.com

<u>For City of Hartford and Chief Rovella</u>:
Nathalie Feola-Guerrieri
City of Hartford
Office of the Corporation Counsel
550 Main Street
Hartford, CT 06103
FeoIn001@hartford.gov